## Borough of Sharpsburg, Appt., v. John J. Saint.

Where an equity action involves only questions of fact, this court will not overrule both the master and the court below on mere doubt or hesitation as to the rectitude of the decree.

(Argued November 15, 1886. Decided January 3, 1887.)

October Term, 1886, No. 245, before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Common Pleas No. 1 of Allegheny County overruling appellant's exceptions to a master's report in favor of complainant, restraining defendant from a threatened taking of his property for a public street or highway. Affirmed.

The facts appear from the following master's report:

The plaintiff in his bill alleges that he is the owner in fee simple of a lot of ground in the borough of Sharpsburg, county

of Allegheny, state of Pennsylvania, fronting 80 feet on the north side of Middle street and extending to the line of the Western Pennsylvania Railroad, formerly canal property; that he and those under whom he claims title have had continued, peaceable, and uninterrupted possession of said property for a period of more than fifty years; that defendant borough, through its proper officers, threaten to enter upon and take possession of, for a public street or highway, the portion of said property lying next to and along the line of the Western Pennsylvania Railroad (formerly the line of the canal towing path), and threatens immediate destruction of improvements thereon erected; that in pursuance and part performance of the threats alleged, the said borough, by its officers, agents, and servants, upon Saturday, October 20, 1883, unlawfully, by force and arms, destroyed his (plaintiff's) fences; and that said borough has no right to take and appropriate said property for street purposes, except in the manner prescribed by law; and that said destruction of improvements and unlawful entry upon his property, if permitted, will cause him irreparable injury and damage, for which there is no adequate remedy at law.

He therefore prays for an injunction to restrain the defendant, its officers, agents, and servants from committing the threatened and unlawful entry upon and destruction of his said property.

The defendant, in the answer, avers that the ownership of said lot of ground by plaintiff and his predecessors in the title and the occupation thereof has for a long time, upwards of forty years, been subject to a public street or road 33 feet in width across the north end thereof, adjoining said canal or railroad property, over which the public has the right at all times to pass, freely and without obstruction; that said plaintiff has wrongfully obstructed and closed up said street or road by erecting buildings and fences thereon, and the act of defendant, complained of in said bill, was for the purpose of removing the said obstruction from said street or road, and abating the nuisance created by said plaintiff; and that said borough has made no attempt to make a present appropriation of said property to the purpose of a street by the exercise of the right of eminent domain, but simply to abate a nuisance as above set forth.

The question in controversy, then, is whether the plaintiff's lot is subject to a public street or road 33 feet in width, or any

other width, across the north end thereof, adjoining said canal or railroad property, over which the public has the right at all times to pass, freely and without obstruction.

The master finds the facts as follows:

The plaintiff is the owner in fee simple of a lot of ground in the borough of Sharpsburg, county of Allegheny, state of Pennsylvania, fronting 80 feet on the north side of Middle street, and extending to the line of the Western Pennsylvania Railroad (formerly canal property).

The defendant borough, through its officers, agents, and servants, threatens to enter upon and take possession of, for a public street or highway, a portion of said property lying next to and along the line of the Western Pennsylvania Railroad (formerly the line of the canal towing path), and threatens immediate destruction of improvements thereon erected; and, in pursuance and part performance of said threats, the said borough has destroyed plaintiff's fences on said portion of said lot.

By several conveyances the plaintiff is now the sole owner of said lot, but he first became interested as a cotenant with others in a larger piece of ground containing said lot, by deed dated January 25, 1871, the grantors therein claiming under deed of James Sharp and wife to William and James Lapsley, dated July 29, 1841, and recorded in the recorder's office, Allegheny county, in deed book, vol. 81, p. 419.

The said deed of Sharp, in describing the property conveyed thereby, has this language: "Beginning at a post on Main street in the general plan of Sharpsburg, and 54 feet 5 inches west of the southwest corner of C. Lover's lot, thence," etc.; and again: "Thence by said line north 5 degrees west, 153 feet to the Pennsylvania canal; thence by said canal south, 61½ degrees west, 306 feet to Liberty street," etc.

Liberty street, mentioned in this deed, is now called Thirteenth street. Two blocks east of Thirteenth street is Fifteenth street, formerly Bridge street, and Fourteenth street is parallel with and an equal distance from Fifteenth and Thirteenth streets.

May 13, 1835, the said James Sharp conveyed to Clement Noble, a lot on corner of Fifteenth street and what is now claimed to be South Canal street.

The description in this deed runs one line to Canal street, and "thence by said street, north 61½ degrees, east 53½ feet," etc.

This deed to Noble also contains the following: "The ground, which is now laid out for and used as public streets, lying on the north and east of said lot, to wit: 3 feet in breadth on the east, and 33 feet on the north, in the event that it should cease to be used as public streets, shall fall into and become to all intents and purposes, a part of the above-described lot."

At, and prior to the date of this last-mentioned deed, James Sharp was the owner of all the lands south of the canal, in what is now the borough of Sharpsburg; and the 33-foot street above mentioned would answer the description of that part of the street claimed by defendant, and called South Canal street.

In the court of quarter sessions of Allegheny, at No. 8, December sessions, 1840, a petition signed by James Sharp, William Lapsley, and James Lapsley *et al.* was presented to court, praying that the territory described be incorporated into a borough; and on March 26, 1842, a decree was entered by the court, incorporating the territory described in the petition, and a plan of Sharpsburg was recorded on the same day in the recorder's office, in plan book, vol. 1, p. 176, which plan shows South Canal street as claimed by defendant.

All the recorded plans of the borough, from the date of incorporation to the present time, show South Canal street, the street in controversy, by name and bounding lines, to wit, plan recorded in plan book, vol. 1, p. 176, above mentioned, recorded March 26, 1842; also plan recorded May 9, 1866, in plan book, vol. 3, p. 118, surveyed between July and August 18, 1851; also, plan recorded January 6, 1869, in plan book, vol. 3, pp. 282 *et seq.,* the last two plans having been surveyed and made at the request of the councils of said borough.

All or nearly all the owners of the property between Thirteenth and Fifteenth streets abutting on South Canal street (subsequent, however, to James Sharp) have, in express terms, by name, recognized South Canal street, excepting the owners of the part known as the Saint lot, purchased from the Lapsleys.

If there had been a dedication of the ground to the borough for a street, there was certainly a sufficient acceptance thereof by the borough, and the plaintiff must have purchased with full knowledge.  But the master is of opinion and finds that there never was such dedication by Sharp, or any subsequent owner of plaintiff's lot, and that whatever use the public made of it was merely permissive, and jointly with the plaintiff or his predecessors in title.

Defendant contends that James Sharp, when he owned the land of which plaintiff's lot is a part, dedicated to the public 33 feet along the canal, including the ground in controversy, for a street or highway, and that this dedication was accepted by the public, and so used ever since. In order to establish the dedication, defendant relies: (1) Upon the deed above mentioned to Clement Noble; (2) upon the deed to the Lapsleys, under whom plaintiff claims; (3) upon the proceedings for the incorporation of the borough of Sharpsburg; and (4) user for very many years.

First. As to the deed to Noble. The deed was made May 13, 1835, nearly seven years before the borough of Sharpsburg was incorporated. Sharp, the grantor, was then the owner of all the land south of the canal in what is now Sharpsburg. The lot conveyed to Noble is situated south of the canal and on the corner of Fifteenth street, nearly two blocks east of the Saint lot in dispute. The deed describes the lot conveyed as bounded on one side by "Canal street." It also contains the following provision: "The ground which is now laid out for and used as public streets lying on the north and east of said lot, to wit: 3 feet in breadth on the east and 33 feet on the north, in the event that it should cease to be used as public streets, shall fall into and become to all intents and purposes a part of the above-described lot."

The 33 feet mentioned must have been located south of the canal, and, with reference to the lot conveyed, precisely where South Canal street is as claimed by the defendant. This is a recognition on the part of Sharp that that portion of what is now claimed to be South Canal street was opened and used at that early day. It is important evidence for the defendant; but would it justify the finding of a dedication of the portion of the land on the north end of the Saint lot by Sharp to public use?

If it were conceded, as proved, that a street 33 feet wide south of the canal was actually opened and used from Fifteenth to Thirteenth street, a conveyance of a lot along the line of the street, in which the owner recognized the street, might be construed as an assent to or a dedication of the street to public use.

But granting that there was a street opened at Fifteenth street, it does not follow that there was a street opened near Thirteenth street, or that the same street extended clear through.

Indeed, the evidence shows otherwise. There has been a road-way of irregular width opened and used to some extent from Fifteenth to Fourteenth street since some time prior to 1835, but it certainly was not opened or used beyond Fourteenth street for many years after 1835, if at all. The street mentioned in the deed is Canal street, not South Canal street.

No reference is made to any plan in the conveyance, and there is no evidence of the existence of any plan showing South Canal street or Canal street at that early date. The plans in evidence were made long subsequent thereto. It seems clear that a dedication as claimed by defendant ought not to be inferred from anything contained in this deed.

Second. The deed of Sharp to the Lapsleys. The deed was dated July 29, 1841, and conveys a piece of land of which plaintiff's lot is a part. The deed in terms conveys to the Pennsylvania canal, and "thence by said canal, south 61½ degrees, west 306 feet to Liberty street" near Thirteenth street. But it starts the description as follows, *viz.*:

"Beginning at a post on Main street in the general plan of Sharpsburg and 54 feet 5 inches west of the southwest corner of C. Lover's lot," etc.

The defendant contends that this is such a reference to the general plan of the borough of Sharpsburg, which was afterward recorded and which shows thereon South Canal street, that the grantor would be affected by it and take subject to the public street.

The lot is described sufficiently in the deed without reference to any particular plan. The plan referred to is not identified in the deed. There is no evidence that there was any plan existing at that date and known as the general plan of Sharpsburgh. The one on record was recorded nearly a year after the conveyance. The grantor may have had in mind, in using the terms employed, simply Main street as actually laid out on the ground, not intending to refer to any particular plan on paper. If he had meant to adopt any plan as part of the description of the land conveyed, he probably would have been more explicit in indicating the plan in mind.

It is too much to presume that there was a general plan of Sharpsburg then in existence, and that the grantor had that particular plan in mind in making the conveyance, and meant to make that plan a part of his deed, in order to find a gift by him to the public of a portion of his land.

Third. The petition and other proceedings relative to the incorporation of the borough of Sharpsburgh. The original petition was filed at No. 8, December sessions, 1840, and was signed by James Sharp, William Lapsley, James Lapsley, *et al.* The defendant requests the master to find that there was attached to this original petition a plan describing the territory to be incorporated, on which plan the street, South Canal street, is marked and identified by name and bounding lines.

It is true, the act of April 1, 1834, under which the proceedings were had, requires that the application shall be in writing, and "shall set forth the name, style, and title of the proposed borough, with a particular description of the boundaries thereof, exhibiting the courses and distances in words at length, and be accompanied with a plot or draft of the same." Act April 1, 1834, § 2.

It is also true that the petition in this case did contain a particular description of the boundaries of the proposed borough, exhibiting the courses and distances in words at length, and that there follows these words, to wit: "See the draft." But these words are not so distinct as the rest of the petition, and seem to have been written with different ink, and there is no plan attached thereto, nor does the paper look as if a plan had ever been actually attached to it.

There was a plan recorded in the recorder's office on the very day the decree incorporating the borough was made by the court; and South Canal street is marked on this plan, and at the same time, but in a different place, the charter of the borough is also recorded. It does not appear at whose instance the plan was recorded. It is quite likely that that plan was exhibited to the court, to show the territory proposed to be incorporated, and that it was recorded by the borough authorities when the decree was made. The plan may have been seen and approved by the signers of the petition before their signatures were affixed; but if there is any evidence upon the subject, it is certainly not clear enough to warrant the finding that the plan was attached to the petition, or treated by Sharp as a part thereof when he signed it.

But if the master be wrong upon this finding of fact, does it make any difference in the result? If it be conceded that there was a plan attached to the petition for incorporation, and that the plan had marked on it South Canal street, as claimed by defendant, does it follow that Sharp, by signing the petition,

obligated himself to dedicate to public use the ground for said
street? The court had nothing to do in that proceeding with
anything but the boundaries. It had no concern with the streets.
The street had not been opened on the lot in controversy. The
law then provided for opening streets, but not without compen-
sating the owner in damages. At most, it was an agreement on
the part of the signers to lay out a borough, if the court would
permit, with streets as marked on the plan, reserving the ques-
tion as to dedication or the payment of damages until the streets
should be opened. Sharp no more agreed to give the ground
for nothing than the rest agreed to buy it from him. The Laps-
leys not then having been the owners of the property, it is unim-
portant that they also sign the petition, unless, perhaps, as to
that Sharp had signed, and that the opening of such a street was
proposed.

Fourth. The extent of the use by the public of the ground in
dispute.

Upon this subject a number of witnesses were examined on
each side. The evidence is somewhat conflicting, but when
closely studied, the facts can be found with reasonable certainty.
It is important to note the times at which the witnesses respec-
tively knew the use of the premises. It is also well to remember
that the tow path was there, and that it was difficult in some
places to tell what was tow path and what was roadway. It
seems unnecessary to discuss the testimony at length.

The evidence satisfies the master that there has been a passage-
way for vehicles along side of the tow path south of the canal,
upon Fifteenth to Fourteenth street since some time prior to
1835; that this roadway, although of irregular width, was wide
enough to drive over; that there never was very much travel on
this way, even between Fifteenth and Fourteenth streets; that
prior to 1866, the two lots west of Fourteenth street, and extend-
ing about 125 feet towards Thirteenth street, were fenced and
cultivated nearly, if not entirely, to the line of the tow path;
that, up to 1855 or 1856, the Lapsley lot, which includes plain-
tiff's, was also gardened and fenced almost, possibly quite, to
the line of the tow path; that from 1855 or 1856 until 1877,
with the exception of two or three years, the Lapsley lot, of which
plaintiff's is a part, was unfenced and used as a board yard;
that from 1877 to 1881, this Lapsley lot was an open common;
that prior to 1855 or 1856 it was impossible to drive a wagon

between Fourteenth and Thirteenth streets, without using the
tow path almost entirely; that from 1855 or 1856 until 1866,
one could not drive between Fourteenth and Thirteenth streets
without using much of the tow path; that there never has been
very much, but there has always been a little travel along the
canal, between Fourteenth and Thirteenth streets; that the tow
path has always been used more or less in such travel, and also
whatever portion of the lots adjacent may have been at the time
unobstructed; that there never has been a regular road between
said streets apart from the tow path; that while the property
was used as a board yard, the owners thereof, for their own pur-
poses, had passages between the board piles through which one
could drive, and there was some driving over the lot between
Fourteenth and Thirteenth streets; that sometimes the boards
were piled near to the tow path, and at other times there was a
passage of from 10 to 16 feet left between the board piles and
the tow path, or railroad, more recently; that whatever use was
made of the lot by the public was jointly with the owners, and
simply permissive.

If these facts be correctly found, it is plain that there has been
no such use of plaintiff's lot by the public, as to have subjected
it to the easement of the public road or highway, as claimed by
defendant.

A space left open in private property, bordering on a high-
way, for the accommodation, not of the public, but of the owner,
is not thereby dedicated to public use, but may be resumed at
pleasure. Gowen v. Philadelphia Exchange Co. 5 Watts & S.
141, 40 Am. Dec. 489.

To prove a dedication by user, the user by the public must
have been adverse and exclusive of the use and enjoyment of
the property by the proprietor, and not a mere use by the public
under, and in connection with, its use by the owner in any man-
ner desired by him. Kocher v. Wilkes Barre, 8 Luzerne Legal
Reg. 191.

If the use of the way is merely a permissive use, no presump-
tion of a grant will arise from lapse of time. In order to
establish a way by user, the user must be adverse, not permissive.
Root v. Com. 98 Pa. 170, 42 Am. Rep. 614; Demuth v. Amweg,
90 Pa. 181.

It is true that the defendant's case seems stronger when con-
sidered as a whole, not in parts. But, all things considered, the

master is of opinion that the merits of the case are with the plaintiff, and he would recommend a final injunction, restraining the defendant, its officers, agents, and servants, from committing the threatened and unlawful entry upon and destruction of plaintiff's property.

Defendant filed, *inter alia,* the following exceptions to the master's report:

Eight. The master erred in not finding that the plan recorded in the plan book, vol. 1, p. 176, is the plan which was attached to the proceeding at No. 8, December sessions, 1840, and in not finding that said plan was actually recorded with the said proceedings in the recorder's office. (This appears by indorsement on the plan itself.)

Nine. The master erred in not finding that said plan, recorded in vol. 1, p. 176, is the general plan of Sharpsburg, and that it was admitted to be such by plaintiff at various times during the progress of the case and upon the argument; and in not further finding that it existed and was known as such general plan prior to July, 1841, and has been so recognized ever since; and that said plan is the one referred to in the deed of James Sharp to the Lapsleys *et al.*

The master filed the following report on exceptions:

As to the eighth exception: the master did find that the plan recorded in plan book, vol. 1, p. 176, was recorded in the recorder's office at the same time that the decree incorporating the borough was recorded: but he was of the opinion that the proceedings incorporating the borough and the plan were recorded originally in different places as they are now; the former in deed book, vol. 64, p. 11, the latter in plan book, vol. 1, p. 176.

Since the report was prepared the master's attention has been called to the fact that in the deed book, immediately after the record of the proceedings of incorporation, there is a page left blank and some appearance of the paper having been pasted on it; and also to the fact that on the back of the plan, in the plan book, is written the following, to wit, "vol. 64, p. 11,"

It is also said that the plan books were not in existence and used in 1842, when the plan was recorded. The master is, therefore, of the opinion and finds that the plan now recorded in plan book, vol. 1, p. 176, was at first actually recorded in the recorder's office with the proceedings incorporating the borough

in deed book, vol. 64, p. 11, and that the plan was afterwards detached and transferred to the plan book.

As to the ninth exception, the master now finds that the plan recorded in plan book, vol. 1, p. 176, is the general plan of the borough of Sharpsburg, and that it was admitted to be such by the plaintiff, or his counsel, during the progress of the case and upon the argument; but he does not feel justified in finding from the evidence that this plan existed prior to July, 1841, or prior to the deed of James Sharp to the Lapsleys, or that it has been recognized as the general plan of Sharpsburg ever since that time, or that it is the one referred to in the deed of James Sharp to the Lapsleys.

The master is of the opinion that the eighth and ninth exceptions are in part well founded, and would amend his report by adding thereto the foregoing findings of fact.

After the hearing of the exceptions in the court below, the following opinion was delivered:

Unless the fact that Sharp and Lapsley signed the petition for the erection of the borough of Sharpsburg, upon the plan of which, attached to the petition, this portion of the street now claimed by the defendant as belonging to the public, or the other fact, that in conveying the property now belonging to plaintiff to Lapsley in July, 1841, Sharp referred to the corner of Main street as laid out in the general plan of Sharpsburg, or both together, create a dedication to the public, which plaintiff is estopped from denying as a matter of law,—I can find no sufficient reason for reversing the finding of the master as to the actual dedication or use of the alleged street by the public.

It seems to me that the signing of the petition is not sufficient, as the law requires nothing more (in this regard) than a particular description of the boundaries of the proposed borough, exhibiting the courses and distances, etc.; and there is no evidence that Sharp actually knew that the alleged street was upon the plan, or indeed ever saw it.

As to the deed to Lapsley, the inference that might otherwise be drawn from a reference to the plan is precluded by the fact that the deed actually rebuts such conclusion by conveying the land actually covered by the street.

While, therefore, the question may not be free from doubt as to the actual intention of the parties at the time it is claimed

by defendant that the dedication was made, this alone justifies the master in his conclusions, which seem fully vindicated in his very carefully prepared and able report.

The exceptions are overruled; and in accordance with the master's recommendation a decree will be entered for perpetual injunction, etc., when presented *sec. reg.*

A decree was accordingly entered and defendant took this appeal, specifying as error the action of the court in overruling the following exceptions to the master's report:

1. The master erred in finding "that there never was such dedication by Sharp or any subsequent owner of plaintiff's lot, and that whatever use the public made of it was merely permissive and jointly with the plaintiff or his predecessor in title."

7. The master erred in not finding that, long prior to the ownership of the lot in question by the plaintiff, a street 33 feet in width was laid out across the north end thereof, dedicated to the public and by said public accepted.

10, 11. The master erred in not finding that there was a valid dedication of the street in question to the public by James Sharp; and that such dedication was acquiesced in and recognized by Lapsley, his grantee, and also by Saint, the plaintiff; and in not finding that the portion of the street passing over the plaintiff's lot and extending to Fifteenth street has been opened and used by the public for upwards of forty years.

13. The master erred in not finding that the portion of said lot upon which defendant's agents entered is a public highway, and that said agents were there for the purpose of removing a nuisance erected thereon by plaintiff.

Also in not finding specifically what, in the opinion, is assumed as the fact,—that the plan recorded with the proceedings, incorporating the borough of Sharpsburg, was in existence prior to the deed of James Sharp to Lapsley.

In entering the final decree that a final injunction issue perpetually restraining the borough of Sharpsburg, its officers, agents, and servants, from committing the threatened and unlawful entry upon, taking possession, and destruction of, the property of plaintiff described in the bill.

In not entering a decree that the bill be dismissed at plaintiff's costs.

*J. D. Shafer, N. S. Williams,* and *S. A. McClung,* for appellant.—There was a sufficient dedication of the street to public use. Clark v. Elizabeth, 37 N. J. L. 120; *Re* Thirty-Second Street, 19 Wend. 128; Wyman v. New York, 11 Wend. 486. See also *Re* Lewis Street, 2 Wend. 472; *Re* Twenty-Ninth Street, 1 Hill, 189; Earle v. New Brunswick, 38 N. J. L. 52; Methodist Episcopal Church v. Hoboken, 33 N. J. L. 13; Kirkpatrick v. Peshine, 24 N. J. Eq. 206; Cox v. James, 59 Barb. 152; Perrin v. New York C. R. Co. 36 N. Y. 120; Bissell v. New York C. R. Co. 23 N. Y. 61; Varick v. Smith, 9 Paige, 547; Smyles v. Hastings, 22 N. Y. 222; Sizer v. Devereux, 16 Barb. 160; Herring v. Fisher, 1 Sandf. 344; Pettibone v. Hamilton, 40 Wis. 402; Goddard, Easements, Bennett's ed. pp. 266 *et seq.;* Farnsworth v. Taylor, 9 Gray, 162; Fox v. Union Sugar Refinery, 109 Mass. 292, and cases cited. Also Barclay v. Howell, 6 Pet. 511, 8 L. ed. 482; Birmingham v. Anderson, 48 Pa. 253; Pittsburg, Ft. W. & C. R. Co. v. Dunn, 56 Pa. 280; Heckerman v. Hummel, 19 Pa. 65; 2 Dill. Mun. Corp. p. 636, and Pennsylvania cases, there cited. Philadelphia & T. R. Co.'s Case, 6 Whart. 44, 36 Am. Dec. 202. See following cases: Com. v. M'Donald, 16 Serg. & R. 394; *Re* Pearl Street, 111 Pa. 565, 5 Atl. 430; Transue v. Sell, 14 W. N. C. 397; Trutt v. Spotts, 87 Pa. 341; Rung v. Shoneberger, 2 Watts, 26, 26 Am. Dec. 95; Com. v. Alburger, 1 Whart. 486; Barter v. Com. 3 Penr. & W. 259; *Re* Penny Pot Landing, 16 Pa. 94; Philadelphia v. Philadelphia & R. R. Co. 58 Pa. 253; Western Sav. Fund Soc. v. Philadelphia, 31 Pa. 183, 72 Am. Dec. 730; Kopf v. Utter, 101 Pa. 27.

*Marshall Brown,* for appellee.—The finding of the master, sanctioned by the court below, will not be set aside except for plain error. Kisor's Appeal, 62 Pa. 428; Burton's Appeal, 93 Pa. 214.

The intention to dedicate must be clearly manifest, in order to deprive a landowner of his property. Goddard, Easements, p. 182; Kocher v. Wilkes Barre, 8 Luzerne Legal Reg. 191; Root v. Com. 98 Pa. 170, 42 Am. Rep. 614; Holdane v. Cold Spring, 21 N. Y. 474; Gowen v. Philadelphia Exchange Co. 5 Watts & S. 141, 40 Am. Dec. 489; Morse v. Ranno, 32 Vt. 600.

Unless such intention can be found in the facts and circum-

stances, no dedication exists.     Kocher v. Wilkes Barre, 8 Luzerne Legal Reg. 191.

The owner's acts and declarations should be deliberate, unequivocal, and decisive, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use.     If they do not clearly and plainly indicate the intention to permanently abandon the property to the use of the public, they are insufficient to establish a case of dedication. Bigelow, Estoppel, 3d ed. 548(1); Holdane v. Cold Spring, 21 N. Y. 474.

An intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential; and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists.     As dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted and altogether prevented from arising, by circumstances incompatible with the supposition that any dedication was intended.     Hall v. Baltimore, 56 Md. 187–194.

To establish a dedication by user, the user by the public must be adverse and exclusive, and not jointly with the owner. Kocher v. Wilkes Barre, 8 Luzerne Legal Reg. 191; Root v. Com. 98 Pa. 170, 42 Am. Rep. 614; Demuth v. Amweg, 90 Pa. 181; Gowen v. Philadelphia Exchange Co. 5 Watts & S. 141, 40 Am. Dec. 489; Duncan v. Hanbest, 2 Brewst. (Pa.) 362; Irwin v. Dixion, 9 How. 10, 13 L. ed. 25; Bigelow, Estoppel, 3d ed. 547, note 4.

There must be a dedication and acceptance by the public. Goddard, Easements, Bennett's ed. p. 182; Bigelow, Estoppel, 3d ed. 555; 32 Legal Jour. 445.

The grant of a lot, on a street laid out, or proposed to be laid out, by a borough, city, or by general legislative authority, but not opened, is not a dedication of the land to public use.     In such case the principle of dedication applied to the conveyance of lots in a private plan laid out by the owner has no application. *Re* Forbes Street, 70 Pa. 137; *Re* Rhinelander, 68 N. Y. 107; Jersey City v. Sackett, 44 N. J. L. 428.

A space left open on private property, bordering on a highway, for the accommodation, not of the public but of the owner, is not thereby dedicated to public use, but may be resumed at pleasure.     Gowen v. Philadelphia Exchange Co. 5 Watts & S.

141, 40 Am. Dec. 489; Biddle v. Ash, 2 Ashm. (Pa.) 211; Neill
v. Gallagher, 31 Phila. Leg. Int. 388; Bigelow, Estoppel, 3d ed.
547, note 4.

If the use of a way is merely a permissive use, no presump-
tion of a grant will arise from lapse of time.    Root v. Com. 98
Pa. 176, 42 Am. Rep. 614; Demuth v. Amweg, 90 Pa. 181.

PER CURIAM:
The case in hand involves questions of fact purely; such being
the status of the contention, we cannot overrule both master and
the court on mere doubt or hesitation.    If, therefore, we were
to admit that the evidence before us raised some doubt in our
minds as to the rectitude of the decree, yet we would not be jus-
tifiable in reversing it.

Decree affirmed and the appeal dismissed, at the costs of the
appellant.